## ECKSTEIN *against* SHOEMAKER.

1. The 14th section of the act of the 26th of March, 1814, which provided that when a majority in number and value of the creditors of an insolvent, should consent in writing thereto, it should be lawful for the Court to make an order, that the debtor shall be released from all suits, and the property he might afterwards acquire, be exempted from execution for any debt contracted, or cause of action created, previous to such discharge for seven years thereafter, was not unconstitutional in respect to a dissenting creditor, where the contract with such creditor was made after the passing of the act of 1814.
2. The act of the 16th of June, 1836, which repeals the act of 1814, does not impair any right acquired by an insolvent under the 14th section of the act of 1814.
3. *It seems* that the act of limitation, does not run during the seven years allowed to the debtor, by the act of 1814.

A SUMMONS was issued to the present term of this court, by Samuel *Eckstein against Jonathan Shoemaker, in an action of assumpsit, to recover the amount of a promissory note, drawn by the defendent in favour of the plaintiff, for the sum of $2833 33, dated the 16th day of January, 1834, and payable three months after date. [*16]

Mr. *Phillips* for the defendant now moved to quash the writ; and produced a certificate of the Prothonotory of the Court of Common Pleas, for the city and county of Philadelphia, dated the 17th of March, 1835, and made in conformity with the 14th section of the act of the 26th March, 1814, setting forth, that on that day, Jonathan Shoemaker, having obtained the consent in writing of a majority in number and value of his creditors, it was ordered by the court that he should be 'discharged from all suits, and " the estate and property he might afterwards acquire, should be exempted from execution for any debt contracted, or cause of action created previous to such discharge, for seven years thereafter." He also read the fourteenth section of the act of the 20th of March, 1814, which declares, that " if after such order so made, any action shall be commenced, or execution issued, it shall be the duty of any judge of the Court from which the process issued, to set aside the same." It was conceded that the plaintiff did not sign the consent. The defendant was discharged as an insolvent debtor, on the. 16th of October, 1834, and consequently after the cause of action had arisen. The plaintiff's name was contained in his list of creditors.

Mr. *Budd* for the plaintiff.—The act of the 16th of June, 1836, which repeals the act of 1814, drops the provision of that

(Eckstein *v.* Shoemaker.)

act, which is resorted to, to sustain this motion, and restricts the power of the court to setting aside an execution, issued within the privileged period of seven years, allotted to the debtor. By the repeal of the act of 1814, the power to dismiss the action summarily, seems to be taken away. The right of the legislature to repeal or modify the fourteenth section of that act, clearly exists, and is sustained by the case of *The Proprietors of the Charleston River Bridge Co.* v. *The Proprietors of the Warren Bridge Co.*, (11 Peters's Rep. 420.) The legislature has a right to give a remedy to enforce a contract, but not to violate a contract. The repeal of the law deprives the debtor of no right important to him; it merely removes an obstruction in the way of the administration of justice. Whilst no injury is inflicted on the honest debtor, by allowing the creditor to institute a suit, it is of vast importance to him, that his claim shall be judicially ascertained, and made a debt of record, before the loss of his papers, or the death of his witnesses. The debtor, by obtaining a stay of execution, has substantially all that he ought to ask. To strike off a suit in this summary manner, is not in conformity with common law usage; and therefore the spirit, rather than the letter of the act should be followed. As in the twelfth section of the act of 1814, provision is made for [*17] the discharge of the debtor's person *when arrested, and in the thirteenth, his property is declared to be liable for the payment of his debts, it is not improbable that, by the enactment of the fourteenth section, the legislature designed to provide for the exemption of his property temporarily from execution, under the peculiar circumstances therein designated. The objectionable phrases, leading to a contrary conclusion, are all omitted in the act of 1836. In the case of *The Bank of the United States* v. *Frederickson*, (stated in Ingraham on Insolvency, p. 276, 2d edit.) it was decided by Judge Washington, that the provision of the act of 1814, was unconstitutional. *Sturges* v. *Crowninshield*, (4 Wheat. Rep. 194). If this act be constitutional, a creditor may, without his knowledge or concurrence, and without any of the securities or benefits of the bankrupt system, have his rights materially affected by the acts of persons who may be entire strangers to him. But there is another important point deserving of the consideration of the court. If this writ be quashed, and the plaintiff be compelled to delay proceedings until the seven years shall have elapsed, an attempt will probably be made to defeat the claim, by pleading the statute of limitations. The participation of the defendant's counsel in the case of *Levy* v. *Cadet*, (17 Serg. & Rawle, 126,) forbids the supposition that that point will be left untried. *Hudson* v. *Carey*, (11 Serg. & Rawle, 10,) shows the extent to which the court has

(Eckstein *v.* Shoemaker.)

gone, although it differs from this case. If the act of limitation will be a bar, then the act of 1814 ought not to be so construed, as to prevent the institution of a suit. Both acts ought to be construed together, and the question which is in operation determined. Both cannot be sustained, for that would produce the entire discharge of the debt, and not a mere temporary suspension. It never could have been the intention of the legislature to prevent a creditor from suing for seven years, and then bar his claim, because he did not sue within six years. If the act of limitations be now running against the plaintiff's claim, and the act of 1814 be not sufficiently powerful to arrest its progress, the latter cannot drive the plaintiff out of court, who is in court, in obedience to the requisitions of the former act of assembly. The act of 1814 either repeals the act of limitations, or must conform to it. To allow them to sustain a position independent of each other, will require the court to perform acts of absurdity and injustice.

Mr. *Phillips.*—This court will not set aside an act of the legislature unless in a very clear case of conflict with the constitution of the United States. The decision of the Supreme Court of the United States on the subject of state insolvent laws, has left the question in a state of great uncertainty. This is not a bankrupt law, but a provision in the nature of a letter of license, to which the consent of a majority of the creditors, both in number and value, is necessary. The act of 1836 is prospective merely, and cannot affect the right and duty of the court under the act of 1814.

*Per Curiam.—The defendant's case is so obviously [*18] within the act of 1814, and so free from constitutional difficulty, resting, as it does, on a contract made subsequently, as to leave nothing for consideration, but the repealing act of 1836. It cannot be said that his exemption from action was incomplete, for the proceeding by which it was effected, had been finished; and the simple repeal of the statute, on which that proceeding was founded, is consequently not to be so construed, as to dissolve it. This disposition of the question of intention, is a disposition of the whole case; but even the competency of legislative power, to the end, might be doubted. The proceeding did not, perhaps, amount to a contract between the defendant and those who did not join in it; but the debt was contracted on the basis of a law, which, entering tacitly into the bargain, and becoming part of it, made the consent of two-thirds, the consent of all; and there was therefore a quasi contract on a consideration, to be found, were it necessary, in the cession of

(Megargel *v.* Saul.)

the defendant's goods. We do not say that the functions of the legislature would be decisively inadequate to the effect imputed to it; but the plaintiff's argument would put the construction on the exercise of a doubtful power, which ought not unnecessarily to be done; for it must, in all cases, be supposed that the legislature understood the constitution, and meant not to impinge on it. Here there is not only no express divesture of acquired rights, but the provisions of the repealing act are inapplicable to any but prospective cases; and the mere dropping of the peculiar provision of the act of 1814, cannot be so construed, as to give the substitute for it a retro-active operation. As to the danger there would be of letting in the statute of limitations, by holding the right of action, and not the right of execution merely, to be suspended, it is plain the legislature never intended to give the debtor that advantage; for the suspension of remedy by action, is express, and for a period that would otherwise bar every debt by simple contract. Now in regard to these, the intent was to suspend the debtor's responsibility, but not to destroy it; and in computing time with a view to the bar, the seven years allowed by the act of 1814 would be struck out. The action was therefore improvidently brought.

Writ quashed.

Cited by Counsel, 4 Watts & Sergeant, 224; 4 Harris, 66; 2 Miles, 341; 2 Ash, 355.

See also, 5 Wright, 444.

---

[*19]               *[PHILADELPHIA, JANUARY 2, 1838.]